Filed 3/30/22  P. v. Graves CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B309103 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA097218) |
| v. | |
| ALEX DEMETRIUS GRAVES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Reversed and remanded.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Alex Demetrius Graves (defendant) appeals from the denial of his petition for vacatur and resentencing pursuant to Penal Code section 1170.95.[1] While this appeal was pending the Legislature enacted Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775), which amends section 1170.95.  (Stats. 2021, ch. 551, § 2 [eff. Jan. 1, 2022].)  In light of this recent legislation we asked the parties to file supplemental briefs addressing the effect, if any, of Senate Bill 775 on defendant's appeal.  In his supplemental brief, defendant acknowledges that Senate Bill 775 is not relevant to this appeal because the legislation expands section 1170.95 relief to include attempted murder and manslaughter.  Here defendant challenges his murder conviction.  Defendant asserts that Senate Bill 775 bears some future relevance to his case, however, that is not the issue here, and we leave it to defendant to file a new or amended petition in the future if he chooses.

We do reach defendant's contention that the trial court erred in finding that he had not made a prima facie showing of eligibility for relief under former section 1170.95.  Respondent agrees as do we.  Thus we reverse and remand the matter to the superior court with directions to issue an order to show cause and conduct an evidentiary hearing pursuant to section 1170.95, subdivision (d).

## BACKGROUND

Defendant was convicted by jury in 2010 of the August 2007 murder of Kytuze Herrera (count 1) and the attempted

[1]     All further statutory references are to the Penal Code, unless otherwise indicated.

murders of four other people (counts 2 through 5) arising from a driveby shooting. Defendant was also convicted of grossly negligent discharge of a firearm and carrying a concealed weapon in October 2007 (counts 6 and 7).[2] As the jury was unable to agree to the degree of the murder, it was deemed to be in the second degree. The special allegation under section 186.22, subdivision (b)(l), that the crimes were committed for the benefit of, at the direction of, and in association with a criminal street gang, with the specific intent to promote, further and assist in criminal conduct by gang members was found to be true. The jury also found true the special allegations under section 12022.53, subdivisions (b), (c), (d), and (e)(1), that a principal personally used and intentionally discharged a handgun. Defendant was sentenced to a total prison term of 168 years to life plus two years eight months.

Defendant was tried with codefendants Maurice Bennett and Robert Maxwell. The evidence at trial showed that on August 4, 2007, several people were outside a Lynwood liquor store when a gray Mustang and white Camaro slowly passed. Gunshots were fired from both cars toward the store, and four of the individuals outside the store were struck by bullets. Surveillance cameras recorded the event. One of the victims later died from her wound. Additional driveby shootings involving the Mustang were committed in August and October 2007. After the October shooting, police officers at the scene observed a gray Mustang and a black SUV speeding away. Both

---

[2] We summarize the facts relating to defendant's trial from the statement of facts in our nonpublished opinion affirming defendant's conviction in *People v. Graves* (Aug. 30, 2012, B227100).

3

cars were stopped, and it was determined that the Mustang belonged to defendant.  Bennett was driving, and defendant was in the front passenger seat.  A .40-caliber handgun found behind the back seat was later determined to be the murder weapon used in the liquor store shooting and to have been used in two of the three other shootings.

Bennett admitted in a police interview several months later that he had been in Maxwell's white Camaro during the liquor store shooting.  He said no one else was in the car with them, and he identified one other person, not defendant, as being involved in that shooting.  Bennett also said there was another car that he did not identify.  When the occupants of the other car began shooting, defendant did as well, although he claimed that he fired into the air.  Bennett told police that the people outside the store were targeted because they were believed to be rival gang members.

The police set up a surveillance and wiretap operation. They learned from recorded conversations on defendant's phone that after defendant saw police fliers seeking information about the shooting and containing a photograph of his car, he took steps to rid himself of the Mustang and get a new car.  After he traded in the Mustang, police recovered it from the dealership.  In a recorded call, defendant spoke to an acquaintance after Bennett was arrested.  They discussed the arrest, and defendant said Bennett had been arrested by the homicide division with bail set at $1 million.  It was agreed this meant that Bennett had been charged with murder.  The acquaintance asked, "Was Mo [(meaning Bennett)] with ya'll?"  Defendant asked, "When?"  The acquaintance replied, "You know what I'm talking about," and defendant said, "Uhhh . . . I think, yeah."  In another call with

4

another acquaintance, defendant said that Bennett was in jail "[f]or the one eighty," slang for murder.

In January 2019, defendant filed a petition for vacatur and resentencing under former section 1170.95. Counsel was appointed. The court received briefs from both defendant and the prosecution. The parties submitted the matter on the briefs. The trial court denied the petition on November 10, 2020, without issuing an order to show cause.

Defendant filed a timely notice of appeal from the order.

## DISCUSSION

Defendant contends and respondent agrees that the trial court erred by summarily denying the section 1170.95 petition and should instead have issued an order to show cause and held an evidentiary hearing. He argues that his petition stated a prima facie case for relief and that the court lacked the authority to weigh evidence or draw inferences and conclusions from evidence at this stage of the proceedings.

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended the laws pertaining to felony murder and murder under the natural and probable consequences doctrine, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Gentile* (2020) 10 Cal.5th 830, 842.) This provision "bars a conviction for first or second degree murder under a natural and probable consequences theory." (*Gentile, supra*, at p. 846.) The Legislature also added former section 1170.95, which provides a procedure for convicted murderers to

5

retroactively seek relief if they could not be convicted under sections 188 and 189 as amended effective January 1, 2019. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

At the time the trial court ruled on defendant's petition former section 1170.95 set forth three conditions to eligibility for vacatur of a murder conviction and resentencing.  As relevant here the conditions are (1) the petitioner was charged with murder "under the natural and probable consequences doctrine," (2) "petitioner was convicted of first degree . . . murder," and (3) "petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, former subd. (a).)  Upon receipt of a petition alleging the three conditions for relief the trial court must appoint counsel if requested, entertain briefing and hold a hearing to determine whether the defendant has made a prima facie showing of eligibility for resentencing.  (§ 1170.95, subd. (c); *Lewis, supra*, 11 Cal.5th at pp. 957, 962.)

The trial court may not engage in factfinding, weigh the evidence, or exercise its discretion in determining whether the defendant has made a prima facie showing; however, the court may consider the record of conviction, including the court's own documents and appellate opinion, in order to distinguish petitions with potential merit from those that are clearly lacking merit.  (*Lewis, supra*, 11 Cal.5th at pp. 970-972.)  The court must take the petitioner's factual allegations as true, make a preliminary assessment regarding whether the petitioner would be entitled to relief if petitioner's factual allegations were proved; and only where the record of conviction contains established facts showing that the petitioner is ineligible for resentencing as a matter of law may the court find that no prima facie showing has

6

been made and deny the petition without issuing an order to show cause. (*Id*. at p. 971.) The "'prima facie bar was intentionally and correctly set very low.'" (*Id*. at p. 972.)

Finding that a fact is established as a matter of law at the prima facie stage means that it is *conclusively* established. (See *People v. Duchine* (2021) 60 Cal.App.5th 798, 815.)

The trial court did not identify any ineligibility as a matter of law. Instead, the trial court relied on its analysis of the evidence, engaged in factfinding and weighing the evidence at the prima facie stage. (*Lewis*, *supra*, 11 Cal.5th at pp. 970-972.) The court identified evidence and inferences to conclude that defendant was ineligible for relief, inferring from the evidence that defendant was the driver of a car involved in the liquor store shooting because one of the two cars used belonged to him and the gun used was later found in defendant's car. The court also noted that defendant had told his girlfriend he had to get rid of his car and that someone was a bad shot because someone was injured. The court assumed that defendant meant the female victim who died, because it was a gang-related shooting, and the intended victims appeared to be men.[3] The court concluded that defendant was directly responsible for the murder as an aider and abettor and that defendant was a major participant in the crime and acted with reckless disregard for human life. The trial

---

[3]     The court stated: "It's the court's position that it is absolutely impossible to commit a drive-by shooting without a driver and a shooter. And as the identified driver, at the very least in this instance, he is directly an aider and abettor. But for not him being a driver, a drive-by shooting could not possibly occur. [¶] I don't know how much more direct you could be an aider and abettor than being a driver during a drive-by shooting."

7

court erred in resolving these factual issues at this stage in proceedings.  (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 980.)

In addition to instructions defining murder, express malice and implied malice, the original trial court instructed with CALCRIM No. 520, which allowed the jury to convict defendant of murder under the natural and probable consequences doctrine. Respondent agrees with defendant that there is no indication in the record that defendant was not convicted under a now-invalid theory or was otherwise ineligible for relief as a matter of law and that defendant thus made a prima facie showing of entitlement to relief.

On remand the trial court therefore must issue an order to show cause and hold an evidentiary hearing, absent a stipulation that the defendant is eligible for resentencing.  (*Lewis, supra*, 11 Cal.5th at p. 971; see § 1170.95, subds. (c), (d)(2).)  At the evidentiary hearing the prosecutor will bear the burden of proving beyond a reasonable doubt that defendant remains guilty of murder under California law as amended by the changes to section 188 or 189 made effective January 1, 2019.  (§ 1170.95, subd. (d)(3).)[4]  We thus remand the matter for that purpose.

## DISPOSITION

The order denying the section 1170.95 petition is reversed and the matter is remanded for the issuance of an order to show

---

[4]  At that hearing the trial court must comply with the clarified requirements of amended section 1170.95, subdivision (d), as the amended statute is now in effect.  We take no position on the outcome of said hearing.

cause and an evidentiary hearing pursuant to section 1170.95, subdivision (d).

_____

CHAVEZ, J.

We concur:

_____

ASHMANN-GERST, Acting P. J.

_____

HOFFSTADT, J.

9